SCHRADER, et al. v. TEXAS Co., et al.

In Banc. Mar. 19, 1951.

No. 37853 (51 So. (2d) 460)

216

Jesse W. Shanks, Talley & Anthony, and Hall & Callender, for appellants.

Price, Phillips & Alford, T. W. Davis, Jr., and Ben Stevens, for appellees.

218

**McGehee, C. J.**

On August 27, 1947, a bill of interpleader was filed herein by the appellee, The Texas Company, as the admitted holder of a valid oil and gas lease, and so as to implead as defendants the holders of the record title of a part of certain undivided mineral interests in two forty-acre tracts of land, who had acquired the same through one Pres Cochrane, purchaser at three guardian sales thereof respectively, made on July 1, 1944, under decrees of the chancery court in proceedings brought by the appellant, Cecil C. Schrader, as guardian of four of his minor children, and the respective guardians of his two other minor children, against two of their adult next of kin; and these guardians were also made defendants to the bill of interpleader of this disinterested stakeholder, in order that all of the said defendants might assert their conflicting claims to a fund tendered into court by the said oil and gas lessee as accumulated royalties and their claim to such other royalties as should thereafter accrue from any other producing oil wells on these lands.

Subsequent to the execution of the oil and gas lease in favor of The Texas Company, Mrs. Alva Ladner Schrader, mother of said minors, died on or about March 30, 1941, leaving as her sole surviving heirs-at-law her husband and the six minor children who each inherited from her a one-seventh undivided interest in the oil, gas and other minerals on the NW¼ of SE¼, and a one-fourteenth undivided interest each in such minerals on the SE¼ of the NE¼, all in Section 12, Township 1 N. Range 17 W, in Marion County, Mississippi, one-half of the minerals under the latter forty acres having been sold prior to the death of Mrs. Schrader.

The appellant Cecil C. Schrader, as guardian of the estate of four of the said minor children—Johnnie Will Schrader, Elsa Mae Schrader, Charles Woodrow Schrader and Maxine Schrader—and with which guardian they

still reside; and Oliver King as guardian of the estate of Iris Elaine King (formerly Lula Mae Schrader) with whom the said minor resides; and Harvey Lowe, as guardian of the estate of Vera Mae Lowe (formerly Vera Mae Schrader) with whom the said minor resides, all filed answers and cross-bills for and on behalf of the said minors, respectively, asking for the cancellations of the sales by the guardians to Pres Cochrane and the deeds to his alleged successors in title, the guardians claiming for and on behalf of his wards the full undivided interest aforesaid in the accumulated royalties, as alleged owners of a one-seventh undivided mineral interest in and to the minerals under the said NW¼ of the SE¼ and a one-fourteenth undivided interest in and to the minerals under the said SE¼ of the NE¼, but one-half of which undivided mineral interest respectively had been conveyed on July 1, 1944, to said Pres Cochrane, predecessor in title of the other defendants to the bill of interpleader, under deeds from the said guardians respectively and the chancery clerks of the respective counties in which the guardianship proceedings were pending, the conveyances to Cochrane being made under and by virtue of the authority granted by a decree of the chancery court rendered on that date on petitions filed by the said guardians respectively for and on behalf of the said minors for authority to sell one-half of their said minerals at and for the sum of $55 per mineral acre, as being for the best interest of the said minors and advantageous to their estates. The petitions above mentioned were filed on June 30, 1944, and also recited that the money to be derived from the sale of one-half of the minerals then owned by the minors was needed for their support, maintenance and education and that *the minors owned no other property or any interest in any other property* at that time, and recited that "the percentage of producing wells is very low, and that said land may produce oil, at some later date; yet on the other hand may not produce oil, and if said land

does produce oil said minors will have ample royalty left to properly take care of them financially, and if it does not produce oil, then they will have the use and benefit of said money for their support, maintenance and education; that it would be for the personal best interest of said minors and advantageous to their estate, for said sale to be consummated for said consideration.''

The petitions also asked that the appellant Cecil C. Schrader, father and sole surviving parent of the said minors, and L. V. Ladner, maternal uncle of the said minors, be made defendants thereto in their individual capacities, and that a summons should be issued and served on them as the two adult next of kin of the minors; and the petition prayed for other and general relief in the premises.

The petitions of these guardians, for and on behalf of the minors, in each of the said guardianship matters, were signed and sworn to the day before, on June 29, 1944, and an answer was duly signed and sworn to on that date and filed on June 30, 1944, by the said two next of kin in each of the proceedings, wherein the latter also represented to the court that it would be to the personal best interest of the minors and advantageous to their estates for the said portion of their minerals to be sold at the price aforesaid; that the proceeds of the proposed sale were needed for the support, maintenance and education of the wards; and therefore the two next of kin requested in their answers that the chancellor should hear and consider the said petitions respectively *on their merits,* and asked that thereupon the prayer of the petition be granted, the petitions and the answers being filed on the same day as aforesaid.

These answers undertook to waive the issuance and service of process under the concluding paragraph contained therein. This effort to waive the issuance and the service of process and to enter the appearance of the said two next of kin was ineffectual for that purpose under Section 1872, Code of 1942, for the reason

that the answers were not filed after the date on which the petitions were filed on June 30, 1944, as heretofore stated.

Therefore, the precise question presented for decision in the instant case is whether or not the filing of an answer on June 30, 1944, by the two adult next of kin, to the petitions of the guardians for the sale of a portion of the minerals belonging to their wards, had the effect of conferring jurisdiction upon the court of all necessary parties to the petitions for the sale thereof the same as if a summons had been issued and served on said defendants, as petitioned for, there being no question that the court had jurisdiction of the subject matter under its general chancery powers under the Constitution of 1890 in the matter of ordering the sale of any portion of the real estate of a minor, when authorized by the provisions of Section 412 or 419, Code of 1942, and if a sale thereof is otherwise deemed necessary for the support, maintenance and education of the minor under the former section, or is for the personal best interest of the minor or advantageous to his or her estate under the latter.

It is to be conceded that the proceedings appear to have been drawn primarily under Section 419, supra, since the two of the adult next of kin named therein were made parties defendant and service of process was requested to be issued and served on them, whereas none would have been required under Section 412. However, the question arises as to whether or not, in the event it should be held that Section 419 was not complied with in the matter of the issuance and service of a summons on the two adult next of kin—even though they filed an answer—the decree of the court of July 1, 1944, ordering the sale of such mineral interests, may be nevertheless upheld under the prayer of the petitions in those causes for general relief, as being consistent with the facts alleged in the petitions, and authorized by Section 412, Code of 1942, without the issuance of a summons, since it was also alleged therein that the money to be derived from the

proposed sale was needed for the support, maintenance and education of the said minors respectively.

But, be that as it may, we go directly to the question of whether or not the filing of the petitions by the guardians for and on behalf of the minors and the filing of the answers by the two adult next of kin was a sufficient compliance with Section 419 to confer jurisdiction upon the trial court of all necessary parties so as to enable it to render a valid decree of sale on July 1, 1944.

All of the facts in the instant case are stipulated in the record by agreement of counsel, and it is expressly conceded therein that the appellant-guardians and their wards are relying on no charge of fraud or implication of fraud; also, that the price obtained for the portion of the minerals sold was a fair and adequate price at that time; that "the attempt by the guardians to sell the mineral interests of said wards was for the purpose of obtaining needed funds for support and maintenance of said wards", and that Cecil C. Schrader and L. V. Ladner, who filed answers to the petitions, were the two adult next of kin of the said minors, and that a summons was neither issued nor served on either of them.

In other words, the appellants seek a reversal of the decree of the trial court, which upheld the validity of the sales in the three guardianship proceedings as rendered on July 1, 1944, on the sole ground that a summons was neither issued nor served on the two adult next of kin in each of the said proceedings, notwithstanding that they appeared and filed an answer to the petitions and testified before the chancellor that in their opinion it would be to the best interest of the minors for a portion of their minerals to be sold at the said price of $55 per mineral acre.

The appellants rely on the cases of McAllister v. Moye, 30 Miss. 258; Temple v. Hammock, 52 Miss. 360; Fitzpatrick v. Beal, 62 Miss. 244; Theobald v. Deslonde, 93 Miss. 208, 46 So. 712; and numerous other cases to sustain the view that the trial court did not obtain jurisdiction

of the parties in such manner as to be able to order a valid sale of the mineral interests involved because of the failure to have issued and served a summons on the two adult next of kin, including Kennedy v. Gaines, 51 Miss. 625.

In McAllister v. Moye, supra, this Court held that the requirement that notice should be served upon a minor before a guardian ad litem could be appointed, applied to such proceedings in the probate court, the same as in a court of chancery. The court was construing an act of 1846, Hutchinson's Code, page 728, which had reference to the notice required to be given to a guardian, and the Court said: "the statute contemplated a proceeding not instituted by a guardian, and the notice to him is in order that he may 'appear and defend the rights of a minor;' and it expressly provides that if he be a party personally interested a guardian ad litem shall be appointed. The presumption of law is that he is interested personally in a manner which may prejudice the rights of the minors, when he institutes a proceeding *against* them, which may divest their interest in their real estate." (Italics ours.)

In the case of Temple v. Hammock, supra, the proceeding was under Article 151, page 463, Revenue Code of 1857, which is the source of our Section 419, Code 1942; and the sale of the lands belonging to the minors was held void for want of service of process on "the three nearest relatives of the minors in this State." The Court ordered citation to Amite County for John Cain and William Cain and to Franklin County for Mary Jones. The citation for Mary Jones was executed and returned but none was issued, executed or returned as to John Cain and William Cain. The reported case does not disclose that John Cain and William Cain appeared and filed an answer to the petition of the guardian for the sale of the land of the minors. As to whether or not the court would have held the sale to be void if they had appeared as adults and filed an answer is a question that remains undecided. The court proceeded to state, how-

ever, in its opinion in that case that "the object of the statute requiring three of the nearest relatives of the minor to be summoned on an application to sell his land, on the allegation that it is for the interest of the ward to sell it, is to apprise those who are supposed to be concerned for his welfare of the proposition to sell his real or personal estate, that they may guard and protect the interest of their kinsman by appearing and objecting to the sale and showing reasons against it. The service of process on the three nearest relatives of the minor, if there be any in the State, is a condition precedent to the exercise by the court of the power to order a sale of the property of the ward, on the application of his guardian to sell because it is for the interest of the ward." That holding of the court would be controlling in the instant case if the court had so held without regard to whether or not an answer was filed by three of the nearest relatives of the minor, but in that case these nearest relatives are not shown to have appeared and filed an answer so as to confer on the court jurisdiction of their persons as necessary defendants.

In Kennedy v. Gaines, supra, there was involved a proceeding to sell the land of the heirs of one Alexander Armstrong deceased, a part of whom were minors. The sale was made by Commissioners for an equal division of the proceeds among the heirs. The petition was by Jasper N. Armstrong, an adult heir of the deceased; R. D. Petrie, guardian of his wards, named, and Jas. H. Thetford, guardian of his wards, named, heirs of the said Armstrong deceased; and was to compel the administrator to sell the lands described in the petition. The court said that citations were necessary for the Armstrong heirs in the probate court, under Chapter 2, Section 13, page 68, Laws 1854, Hutch. Code, page 667, Section 102, which Act in authorizing lands to be sold to insure an equal division, expressly provides that "each claimant shall be first duly summoned to show cause (if any he can) against such sale". The minor heirs of

Armstrong were claimants and they were not summoned to show cause against the sale. In that case the sale was held to be void as to the minor heirs because the statute involved, which provided for the sale of lands to insure an equal division of the proceeds, contained this language: *"Provided always* that each claimant shall be first duly summoned to show cause (if any he can) against such sale.'' The words "provided always" were italicized in the statute. The minor heirs being among the claimants, the court said "it is no answer for the omission of process to say, the heirs had notice, or that they appeared in the proceeding without process, for minors can waive no right.''

In that case the Court did hold that it was error to assume that the heirs were in court in the persons of their guardians, and hence, that citations were not necessary. This, in our opinion, was because the statute made process by a summons on every claimant of an interest in the land indispensable, whereas under Section 419, Code 1942, no summons is required to be issued and served on the minors, and the appellants in the case now before us do not contend that the issuance and service of a summons on the minors was necessary to the validity of the sales. They contend rather that the issuance and service of a summons on the two adult next of kin who filed answers in the case was essential to conferring jurisdiction on the court of the necessary parties to the proceedings in question.

A careful reading of all of the cases cited in the briefs, and other decisions of this Court bearing upon the subject, has revealed no instance where this Court has ever held that the issuance and service of a summons on an adult is essential to jurisdiction where the adult defendant had filed an answer to a petition, bill of complaint or declaration, as the case may be. Moreover, most all of our statutes on process require that a summons or publication shall be issued or made, and served or published on the defendants to any proceeding in our

courts, but we are unable to find any precedent in the cases cited in the briefs or in any other decision of this Court for holding that the issuance and service or the issuance and publication of a summons is essential where a defendant is an adult and files an answer in the case.

In Fitzpatrick v. Beal, supra, the Court had under consideration a proceeding to sell land of a minor, under a statute which likewise required that "a summons shall issue for at least three of the near relations of the minor, if there be any in the state", and wherein the Court held that: "When the sale is to be made for the maintenance and education of the ward, because of the insufficiency of the personal estate and the rents and profits of the real estate for that purpose, or if it should be deemed most advantageous to the interests of the ward to sell real estate in preference to the sale of personal estate for the maintenance and education of the ward, as provided by Section 2109 of the Code, a summons is not necessary, but the court may act on the application of the guardian."

In Theobald v. Deslonde, supra, the Court held that the proceeding was manifestly brought under Section 2205 of the Code of 1892, the source of Section 419, Code of 1942, because the petition prayed for process for three near relatives of the minor under that statute, naming the section, and the petition did not allege such facts as to bring it within Section 2197, Code 1892, the source of Section 412, Code 1942; and the opinion of the Court states that the record disclosed affirmatively the fact that no summons was issued or served, except upon one Dahlgren, a cousin of the petitioner, whereas, there were three of the minors, and two of them were necessarily the nearest of kin of the other since their mother, as guardian, filed the petition, and they were brothers and sister. In other words, only one relative was served with process as a near relative, and none other appeared and answered, and hence the court necessarily held that the trial court had no jurisdiction, such as to enable it to order a sale of the land of these minors. That case is

cited by appellants and is important here only on the point as to whether or not the proceedings in 1944 for the sale of a portion of the minerals of the minors in the instant case were brought under Section 419 instead of Section 412, Code of 1942. The Court held that the proceeding in that case was brought under Section 2205, Code of 1892—the source of Section 419, Code of 1942—because the "petition itself expressly prays for process for three near relatives of the minors to be served under this section 2205, *naming the section*". (Italics ours.) And also because "The allegations required to be made under Section 2413, (the source of Section 412, Code 1942) to the effect that, if the personalty of the estate and the rents and profits of the real estate are not sufficient for the maintenance and education of the ward, the court may, on investigation, decree the sale, etc., are not in the petition in this case". [93 Miss. 208, 46 So. 713.]

However, the petitions under which the minerals here involved were ordered sold on July 1, 1944, did in fact contain an allegation that "the above described land is the only property in which said minors own any interest, and prior to the leasing of said land, very little revenue was received therefrom; . . . that said cash money (for which the minerals were to be sold) is and will be needed for the support, maintenance and education of said minors". Therefore, the question arises as to whether or not these allegations are tantamount to an allegation that the personal estate and the rents and profits of the real estate were not sufficient for the maintenance and education of the ward. No question was involved as to whether the realty should be sold in preference to the personalty, since they owned no personalty. However, it is unnecessary that we decide the question as to whether or not the proceedings for the sale of these mineral interests in 1944 were brought under both Sections 412 and 419, Code 1942, if there was a sufficient compliance with the requirements of the latter section as to process to

confer jurisdiction of all necessary parties to such proceedings.

In the case of Wilkerson v. Swayze, 147 Miss. 141, 113 So. 327, cited by appellees, there was involved a proceeding for the removal of the disabilities of minority of a minor in order that she might execute a deed of conveyance of her real estate, where her mother was the only parent and appeared and answered the application without process, although Section 544, Code 1906, read as follows: ''The application therefor shall be made in writing by the minor by his next friend, and it shall state the age of such minor and the names and place of residence of his parents, and, if he has no parent, the names and place of residence of two of his nearest kin within the third degree, computed according to the civil law, and the reasons on which the removal of the disability is sought; and, when such petition shall be filed, the clerk of the court *shall issue the proper process,* as in other suits, to make the proper parties defendant, *which shall be executed and returned* as in other cases; and any person so made a party, or any other relative or friend of the minor, may appear and resist the application.'' (Italics ours.) The Court in its opinion in that case stated: ''So far as this record shows, Mrs. L. M. Perry was the mother and only living parent of the child. She was, then, if that be true, the only necessary party defendant in the cause. Presumably she was *sui juris* and knew her own mind, and when she appeared in court and filed her answer she thereby conferred the power upon the chancellor to hear the cause at a date agreeable to him and to the parties, in vacation.'' [147 Miss. 141, 113 So. 330.] And the Court further held that: ''It is too well settled in law to need citation of authorities that a defendant who is *sui juris* may appear and waive the issuance and service of process, file answer, and confer jurisdiction upon the court. This was done in this case. Not only that, but the one person in all the world who had the most interest, presumably, in this minor and her

welfare, the mother of the child, having appeared, thereby conferred jurisdiction upon the court, and it was as though process had been issued and served to a term of the court or to a day named in the process, . . . Her appearance in the court was a waiver of the issuance and service of process; and the recitation in the decree that the chancellor heard proof and was fully advised is amply sufficient, in our opinion, to vest the chancellor with complete jurisdiction; . . ."

In McLeiter v. Rackley, 148 Miss. 75, 114 So. 128, 129, where the disabilities of minority of a thirteen year old girl were removed to enable her to convey her land, the court said: "The petition for the removal of the appellee's disabilities of minority is in her own name, 'by her next friend, Aline Sorrell,' and alleges:

"That 'the said minor is thirteen years of age, that she has neither father nor mother living, and that her next of kin are her two brothers, E. J. Goodier of Beaumont, Tex., and H. E. Goodier, 925 Orleans Street, New Orleans, La., she having no other brothers or sisters.'

"The petition was sworn to by Aline Sorrell.

"*No process was issued for the appellee's two brothers,* for the reason that they entered their appearance in writing, and consented 'to decree for the removal of the disabilities of said minor as prayed in said petition.'

"The decree removing the appellee's disabilities of minority recites that:

" 'The brothers and next of kin of said minor having entered their appearance to said petition, and consented to a decree according to the prayer thereof, . . .. . . . and, as recently held in Wilkerson v. Swayze, 147 Miss. 141, 113 So. 327, the issuance of a summons may be waived by the next of kin in a proceeding for the removal of disabilities of minority." (Italics ours.)

It may be conceded that the analogy between a proceeding to sell real estate of a minor as being for his personal best interest or advantageous to his estate and one to remove the disabilities of minority of a minor to enable

him to do so is not a complete analogy; but the principle announced and the point decided by the court in these cases involving the removal of disabilities of minority is that adult defendants are *sui juris*, and are therefore capable of filing answers and subjecting themselves to the jurisdiction of the court, thereby dispensing with the necessity for the issuance and service of process on them —a requirement implicit in each of the statutes governing an adversary proceeding. ■ ■ The purpose of the requirement for the issuance and service of a summons in each instance is to apprise the next of kin as to what is proposed to be done in order that they may appear and answer the petition if they so desire; and when they do appear and answer the purpose of the issuance and service of the summons has been fully served, and therefore the reason, for requiring a summons to be actually issued and served, fails. What are they to be summoned for? The answer is, "to show cause, if any they can, why the relief prayed for should not be granted." They came, they answered, they testified, and they said, in effect, "we know of no reason why the court should not permit a sale of a part of the mineral interests of these minors at such an adequate price of $55.00 per mineral acre, since it is not known whether oil will be discovered in the locality of these lands, or not." It is true that the minors had the statutory right to have two of their adult next of kin notified of the proposal by the guardians to sell a portion of their minerals, but of more importance was their right to have these next of kin given an opportunity to be heard, and this right they both had and exercised, and the purpose of the statute was thereby completely served. Had "a summons been issued and served", these adult next of kin could have ignored it, and the sale would have, nevertheless, been valid. Is it void then because they answered, testified and gave the court the benefit of their judgment in the matter, without a summons to do so?

Moreover, Section 1872, Code of 1942, clearly recognizes that any adult defendant may, by filing a plea or answer, enter his or her appearance for all purposes, with the same effect as if he or she had been duly served with process, in that the said statute expressly provides that: "Any party defendant who is not a minor, lunatic, or convict of felony, may, without filing any pleading there in, waive the service of process, or enter his or her appearance, either or both, in any civil cause or proceeding . . .". In the instant case the waiver of the service of process was ineffectual since it was not executed after the day on which the proceeding was filed, as required by this statute, but was executed on the day prior thereto. This fact, however, did not prevent the filing of the answer, on the day that the proceeding was filed, from conferring on the court jurisdiction of the persons of all necessary parties. The statute in providing how anyone who is not a minor, etc., may waive service of process, without filing a plea, thereby recognizes that such a defendant already had the right to come into court by filing a plea or answer.

The case of Khoury v. Saik, 203 Miss. 155, 33 So. (2d) 616, is distinguishable on the ground that in that case the minor heir attempted to appear in a case as a nonresident defendant where the process would have been void because the nonresident summons by publication for her was not based upon the requisite compliance with the statute which provided therefor. Moreover, we do not have any minor *defendants* involved in the proceedings of 1944 for the sale of a portion of their minerals, since the proceedings were brought for and on their behalf by their guardians respectively, and for the interest of the minors. We are unable to agree with the contention of the appellants that the proceedings in 1944 for the sale of a portion of these minerals were brought against the minors, but we think that they were brought for and on their behalf by their guardians respectively, as alleged in the petitions, and for the best interest of the minors;

that it was indispensable that the guardians should allege and prove such fact before the Court could order the sale petitioned for; and that the only necessary defendants to the proceedings were the two adult next of kin, who being *sui juris* filed their own answer and subjected themselves to the jurisdiction of the court. As heretofore stated, it is not contended by appellants that process on the minors was necessary.

The guardian in the instant case, being the father of the minors as well as guardian of their estate, is presumed to have been more interested in their welfare than anyone else, and he sold his own one-seventh undivided interest therein to the same grantee and for the same consideration then paid for the interests of the wards, respectively. Another of the petitioners for that sale was Harvey Lowe, guardian of the estate of Vera Mae Lowe, formerly Vera Mae Schrader, who had conferred upon her his name and had taken her into his household to rear, and is therefore presumed to have brought his petition for and on behalf of this minor and to promote what he conceived to be her best interest; he had no pecuniary interest of his own to serve in the matter of a sale for an admittedly adequate price. What is said in the next preceding sentence should also apply to Oliver King, the other petitioner for the sale of 1944, as guardian of Iris Elaine King, formerly Lula Mae Schrader.

But finally it is urged in the instant case that Cecil C. Schrader, the father and guardian of four of the minor children, and with whom they reside, was not qualified to serve in the dual capacity of guardian and petitioner on their behalf in asking for authority to sell the minerals, and also at the same time as a defendant adult next of kin in the same proceeding; that when he filed his answer as an adult next of kin and defendant he was undertaking to answer his own petition. However, he did not answer the petition as guardian but as one of the two adult next of kin as an individual.

In the case of Bazor v. J. J. Newman Lumber Co., 133 Miss. 538, 97 So. 761, 762, where there was involved an ex parte petition for the removal of the disabilities of a minor, and where the petition was filed by the minor through his father and mother as next friends, the court said: "While it is true that in the present case the father and mother of the minor are joined in the petition as next friends, they are likewise the two nearest of kin, who by nature should be most interested in the welfare of the minor, and they are as effectively parties to the petition as if named therein as nearest of kin. We know of no reason why they cannot be joined in the dual capacity, and, since the statute as amended only required that the two of the nearest of kin shall unite with the minor in his application, we think the petition in this case was sufficient to confer jurisdiction on the chancery court, and that the decree entered thereon is valid.

We are unable to understand just why this guardian could not be made a defendant in his individual capacity as one of the two next of kin, since he is in fact one of them and Section 419 does not exclude him from its terms, but expressly requires that two adult next of kin shall be made defendants to a petition for the sale of a part of the real estate of a minor. He should be more interested than any other relative in protecting the welfare of his children since he was their sole surviving parent and he had their custody and care as members of his household. At any rate, this statute has not been construed in any case so as to hold that he would be disqualified to be a defendant in his individual capacity as one of the next of kin.

It is true that in the case of McAllister v. Move, hereinbefore discussed, the Court said that: "The notice to the guardian required by that statute (of March 5, 1846, Sec. 4 on page 728 of Hutch. Code) was not and could not be given, because the guardian was already the petitioner; and if cited, it would have been only to answer his own petition. The statute (the Act of 1846, instead of Section

419, Code 1942) contemplates a proceeding not instituted by a guardian, and *notice to him* is in order that he may 'appear and defend the rights of the minor'; . . . .'' (Italic ours.) That statute provided that ''no order or decree affecting the rights or interest of any minor, shall be valid and binding upon said minor, or his or her interest in any estate administered in any Court of Probates in this state, unless his or her guardian, if a resident of the county in which the proceedings are had, shall be personally served with five days notice to appear and defend the rights of any minor; . . .''. Such is not the requirement of Section 419, Code of 1942. In the instant case the father of the minors did not file an answer *as guardian* to his own petition as such, but he filed the answer in his individual capacity as an adult next of kin to the minor in answer to the petition filed by the guardian. We are, therefore, of the opinion that what was said in that case is not controlling on the point as to whether or not Cecil C. Schrader was prohibited from appearing individually as one of the two next of kin and answering the petition, any more than he would have been prevented from serving in the dual capacity of next friend and one of the nearest of kin in a petition for the removal of the disabilities of minority of a ward, as he is authorized to do under the rule announced in the case of Bazor v. J. J. Newman Lumber Co., supra.

It has been suggested in the discussion and consideration of this case that Section 419, supra, contemplates that both of the two adult next of kin who are made defendants should be persons who have no pecuniary interest in the proposed sale, and that Cecil C. Schrader, being the owner of an undivided interest in the minerals, may have been interested in having the sale made in order that he might dispose of his own interest at that proportionate price per acre, and that without the sale of the interests of his children therein he would have been unable to have sold his own. But we are not authorized to assume that he would petition the court for authority to

sell the interests of his wards unless he honestly believed that it was to their personal best interest to do so or advantageous to their estates, and merely to serve his own personal interest. Such a course would constitute a fraud upon his wards and it is expressly stipulated that no charge of fraud or implication of fraud is relied upon in the instant case. Moreover, it has occurred in innumerable instances that a mother or an adult brother or sister is the guardian for minor children or minor brothers and sisters, respectively, and who are likewise tenants in common of the property proposed to be sold. If the fact alone that such a guardian had a share to sell would disqualify him or her to serve as a defendant adult next of kin in the proceeding for the sale of the interest of minors in their real estate, then all other adult brothers or sisters as next of kin would likewise be disqualified, even though they be the only adult next of kin of the minors in this state. Then, too, this contention would be contrary to the decision in Theobald v. Deslonde, supra, where the Court held in a proceeding to sell real estate of a minor under Section 2205, Code 1892, the source of Section 419, Code 1942, that the two other minors, who likewise owned an interest in the real estate, could have been made defendants as ''nearest of kin'' of the other, instead of making their cousin Dahlgren alone a defendant in the case.

It is also contended under the opposing view herein that Section 419, supra, contemplates a contested or adversary proceeding and that what was done by the guardian in signing and swearing to the petition on June 29, 1944, and by the two next of kin in signing and swearing to their answer on that day, and both of which were filed on June 30, 1944, for the sale of the portion of the minerals of the wards, amounted, in effect, to an ex parte proceeding, not contemplated by the statute. But, if we should hold that the two adult next of kin cannot come before the court and represent that what is said in the petition of the guardian is true and that the relief

prayed for should be granted, we would in effect be holding that the two next of kin must deny and contest the allegations of the guardian's petition, even though they know that such allegations are true, and this notwithstanding that the trend of recent legislation has evinced an effort to insure that pleadings shall speak the truth, instead of falsely denying under oath those allegations which are known to be true. While it is required that a guardian ad litem appointed under this statute, where there are not two adult next of kin in this state, shall answer the petition and require the allegations to be established by proof, it is also true that a guardian ad litem is not necessarily a person who is particularly interested in the welfare of the ward, as the next of kin are supposed to be, and may not be familiar with the character of the real estate, the personal best interest of the minor, or what would be advantageous to his estate. And in the instant case the two adult next of kin did not undertake to waive proof, but asked in their answer that the petition be heard on its merits, which was accordingly done.

We are of the opinion that since it is agreed that there was no fraud or implications of fraud in connection with the proceedings for the sale of the portion of the minerals of these minors on July 1, 1944, and that the same were sold for a fair and adequate price at that time, we would not be justified in now declaring the sales to be void, cancelling the deed of the purchaser and those of his successors in title, on the sole ground that no summons was issued and served on the two adult next of kin, in the absence of some precedent for holding that the filing of the answer by such defendants would not suffice to dispense with the necessity of having had a summons issued and served on them.

The decree of the trial court herein appealed from must, therefore, be affirmed.

Affirmed.

**Hall, J.,** took no part in the consideration or decision of this case.

**Lee, J.** (dissenting).

My consideration of this case brings me to these conclusions: (1) The issuance and service of process on two adult near relations were jurisdictional requisites. (2) Such jurisdictional requisites could not be dispensed with. (3) There was no provision of law for ex parte proceedings. (4) The law governing the removal of disabilities of minority and the sale of property of minors, under Section 419, Code of 1942, represent distinct legislative philosophies, and should not be confused. (5) The Schrader proceeding did not legally comply with the requirement of two next of kin. And (6) there was no justification for general relief under Section 412, Code of 1942.

I present my views on these conclusions in the order named.

(1) Section 419, supra, is evolved from Article 151, Code of 1857. Under the latter act, at least three of the nearest relations had to be summoned. Now, Temple v. Hammock, 52 Miss. 360, was a construction of that provision. Rebecca Ann Seal, mother of the Ford children, and her second husband, Pascal Seal, were guardians of these children. As such, they petitioned the probate court for an order to sell the lands of their wards, alleging that it would be for the best interest of the minors. They prayed for process for John Cain, William Cain and Mary Jones, the nearest relations of said minors living in the State, to appear and show cause against the sale. Mary Jones was summoned. However, no citation was issued for, or served on, John Cain and William Cain, and such failure in that regard was the sole question for determination. This Court invalidated the sale with the following pronouncement: *"The service of process on the three nearest relatives of the minor,* if there be any in

the state, *is a condition precedent* to the exercise by the court of the power to order a sale of the property of the ward on the application of his guardian to sell because it is for the interest of the ward.'' See also Fitzpatrick v. Beal, 62 Miss. 244. (Emphasis supplied.)

The decision in Temple v. Hammock, supra, gave notice to all guardians, for the future, that if they would sell the property of their wards, they must summon the requisite next of kin, if to be found. It was delivered in 1876. It was the law for eighty years. At the time of the proceedings in the case before us, that decision had neither been overruled or modified by any subsequent decision, nor by legislative amendment. Even when the Legislature enacted Chapter 415, Laws of 1946, it provided that, if at least two adult relations ''shall join in the petition, the notice and summons . . . may be dispensed with and said matter proceeded with ex parte. It seems to me that the Legislature, by its language, recognized that, prior to this amendment, the notice and summons could not be dispensed with, but that they were precedent conditions. The proceedings here antedated this amendment, and, of course, their complexion was not changed. I am, therefore, unwilling to uproot a landmark of the law.

(2) Such jurisdictional requisities could not be dispensed with. The capacity of the next of kin was analogous to that of a guardian ad litem, for Section 419, supra, provides that, where there are no adult near relations in the State, the court shall '' by order, designate a guardian ad litem upon whom process may be had''. The answer of a guardian ad litem ''is not the answer of the guardian himself, but of the infant by the guardian ad litem. It neither admits nor can admit anything . . . .'' Griffith's Miss. Chancery Practice, Sec. 533, p. 577.

But the majority opinion takes the position that the adult next of kin filed an answer and appeared in the proceedings, and, on that account, the issuance and serv-

ice of process became unnecessary. However, in Kennedy v. Gaines, 51 Miss. 625, the language of the statute of 1854, under which that proceeding was instituted, provided that process should issue, and that all of those interested should be summoned, when a petition for the sale of lands was presented in a probate court "by any heir, executor, administrator, guardian or other person interested, under any statute now in force." The petition was by the guardians of the minors and one adult heir. No citations were issued. The Court, in holding that the omission was fatal, said: "It is no answer for the omission of process to say, the heirs had notice, or *that they appeared in the proceeding without process, for minors can waive no right.*" (Emphasis supplied.)

I think that the service of process on the two adult next of kin was a right, inherent in the minors, and necessary to be preserved before the court could divest them of their property.

(3) When these proceedings were instituted, there was no provision of law for them to be ex parte. In Maclay v. Equitable Life Assurance Society, 152 U. S. 499, 14 S. Ct. 678, 38 L. Ed. 528, the Supreme Court of the United States observed that the statutes limiting the general power of disposition which guardians had at common law have been strictly construed by our Court. In a note of that decision, it is said: "The power of a guardian to sell real estate of his minor is derived entirely from statute, and independently of it, the court has no jurisdiction to authorize a sale of a ward's land by his guardian."

Consequently a literal compliance with the statute was necessary. The statutory method partakes of the nature of a litigated matter. But, in this case, the legislative fiat was ignored. The guardians and the near relations got together, and, respectively, signed the petitions for the sale, and the waivers of process and the answers at one and the same time. All of the papers were then filed the next day. Although the next of kin did not actually

join in the petitions to sell, the proceedings were, in fact, ex parte. The near relations answered before they were under any obligation to do so. They voluntarily admitted all of the averments of the petitions, and asked that the relief prayed for should be granted. I am unable to give approval to such a complete departure from the method prescribed by the Legislature for selling the interests of minors in real estate.

(4) The laws governing the removal of disabilities of minority and the sale of property of minors under Section 419, supra, represent distinct legislative philosophies, and should not be confused.

The majority opinion concedes that the proceedings here involved appear to have been drawn primarily under Section 419. But, it is contended that there is great similarity between the statutes authorizing removal of disabilities of minority and that liberality has been indulged by the courts in those proceedings, and, for that reason, we should give a liberal construction as regards the sale of lands by guardians. Wilkerson v. Swayze, 147 Miss. 141, 113 So. 327, is cited. I am not impressed with this contention. There is ample reason for these different philosophies.

In the removal of the disability of minority, usually the minor has reached an age which assures some degree of maturity, intelligence, judgment and discretion—from fifteen or sixteen years upward. It is true that in McLeiter v. Rackley, 148 Miss. 75, 114 So. 128, the disability of minority of a thirteen year old girl was removed for the purpose of enabling her to sell her interest, along with her two brothers, in land. But this is the only instance called to our attention, from the multitude of decisions, where the disability of a minor of such tender years has been removed. In such proceedings, the minor may appear by a next friend, who is not even a relative. Since the enactment of Chapter 123, Laws of 1918, if two of the next of kin of the minor unite with him, it is unnecessary to make any person defendant. When the disability is

removed, the exercise of the authorized act is still in the power of the minor. He is not required to do that which the court has empowered him to do. Even then, relatives or others may counsel him against such undertaking, and he can refrain from so doing.

But, a sale forever divests him of his property. That kind of proceeding is treated with such gravity by the Legislature that his guardian only can institute the proceeding. "A guardianship is a trust of the highest and most sacred character. The guardian assumes to act for the parties, whom the law declares without discretion to act for themselves." Brandau v. Greer, 95 Miss. 100, 48 So. 519, 520. Even though that requirement ought reasonably to assure preservation of the minor's interest, the law does not stop at that point. In addition, two of his adult near relations must be made parties—if he has that many in the State—and "a summons shall issue for" them. When this statutory method is utilized, generally speaking, the minors are of tender age. If they are old enough, usually their disability of minority is removed. The clear distinction is that, in removing the disability of minority, the minor is merely authorized and empowered to do the act in question, whereas the sale of the property forever divests him of his interest, whether he consents or not and even when he is not old enough to comprehend or have any opinion about the matter.

(5) The Schrader proceeding did not legally comply with the requirement of two next of kin. Schrader signed the petition as guardian, and brought the action. He signed the waiver and the answer as one of the two near relations. Only one other besides himself was a party. In his petition, he stated that he was "the owner of an interest in the above described land, and has agreed to sell the same proportionate amount of his mineral interest under said land to the said Pres. Cochrane at and for the same cash consideration." I think that the above allegation constituted strong evidence of a potential adversary proceeding. It may signify that he wished to sell

his interest, but before he could do this, it was necessary also to sell the interest of his wards, thereby furnishing a motive inconsistent with the obligations owing by him to his wards. See McAllister v. Moye, 30 Miss. 258.

The majority opinion cites the case of Bazor v. J. J. Newman Lumber Co., 133 Miss. 538, 97 So. 761, in justification for approving the guardian's action in a dual capacity, as both guardian and adult relation. In that case, Bazor's father and mother joined in the petition as next friends for the removal of his disability of minority. They were, of course, his nearest of kin. Such proceeding was in strict conformity with the statute, for Chapter 123, Laws of 1918, provided that: ". . . if any two of such kindred known to (the minor) or his co-petitioners shall unite with him in his application, it shall not be necessary to make any person defendant thereto." Thus, the Court approved the removal in that case, because the proceedings complied, in every respect, with the statute. Actually the necessity for a next friend in that case was dispensed with inasmuch as Bazor was joined by his two nearest of kin.

Reduced to its last analysis, here was the situation: Schrader, as guardian, instituted the proceeding. He made himself a party-defendant. He prayed for process for himself. He then waived the service of such process upon himself. He then voluntarily answered his own petition. In that answer, he prayed that the relief asked for in the original petition should be granted. What an unheard of procedure! And yet, it was by such procedure that the interests of four Schrader children of tender years were taken from them!

(6) There was no justification for general relief under Section 412, supra. The petitions and the decrees have all of the earmarks of Section 419, supra, and the majority opinion, in effect, so concedes. Keeping in mind that Section 2205, Code of 1892, Section 2422, Code 1906, has evolved into Section 419, supra; and that Section 2197, Code of 1892, Section 2413, Code of 1906, has likewise

evolved into Section 412, supra, I think the case of Theobald v. Deslonde, 93 Miss. 208, 46 So. 712, 713, is decisive of this question. There the Court said: ''The petition under which this land was sold was manifestly bottomed on Section 2205 of the Code of 1892 (section 2422 of the Code of 1906), and, just as manifestly, was not brought under section 2197 of the Code of 1892 (section 2413 of the Code of 1906). The petition itself expressly prays for process for three near relatives of the minors to be served under this section 2205, naming the section. The allegations required to be made under section 2413, to the effect that, if the personalty of the estate and the rents and profits of the real estate are not sufficient for the maintenance and education of the ward, the court may, on investigation, decree the sale, etc., are not in the petition in this case; so that it is perfectly clear that the effort was to sell the land under and by virtue of the provisions of section 2205 of the Code of 1892; and yet the record discloses affirmatively the fact that no summons was issued or served, except upon Dahlgren, who procured the sale. It is true the petition alleges that these three minors had no other relative in the state, except A. M. Dahlgren; but it also shows plainly that these three minors were brothers and sister, and we think it is clear under this statute that in such case each minor had the right to have the other two cited as its next of kin. . . . We think the order of sale was absolutely null and void for this reason. The court had no jurisdiction over the parties.''

For the foregoing reasons, with deference, I dissent.